Irene ROUSSEAU and Louise
McKenna, Plaintiffs,

v.

Nancy BORDELEAU, in Her Capacity as
Director of the Rhode Island Depart-
ment of Human Services, De-
fendant/Third Party Plaintiff,

v.

Margaret HECKLER, in Her Capacity as
Secretary of the Department of Health
and Human Services, Third Party De-
fendant.

Civ. A. No. 84–0538.

United States District Court,
D. Rhode Island.

Dec. 18, 1985.

Barry Best, James Hardy, Rhode Island
Legal Services, Providence, R.I., for plain-
tiff.

Carolyn Lembo, Sp. Asst. Atty. Gen.,
Providence, R.I., for defendant/third party
plaintiff.

Everett Sammartino, Asst. U.S. Atty.,
Providence, R.I., Nanct Nemon, Deputy Re-
gional Atty., Region I, Boston, Mass., Don-
ald G. Kosin, Jr., Office of the General
Counsel, Washington, D.C., for third party
defendant.

## OPINION

FRANCIS J. BOYLE, Chief Judge.

Plaintiffs seek a declaratory judgment
that the policy of the Rhode Island Depart-
ment of Human Services (DHS) of automat-
ically denying a disability claim for Medical
Assistance when the same applicant has
been found ineligible for disability pay-
ments under the Supplementary Security
Income (SSI) Program is a violation of the
Social Security Act and the due process
clause of the Constitution.[1] Plaintiffs as-
sert that DHS, the state agency respon-
sible for administering the Medical Assist-
ance Program, should be enjoined from de-
nying Medical Assistance when the appli-
cant has been denied disability benefits un-
der the federal SSI Program. The Court
grants the requested relief for reasons
which follow.

The essential facts giving rise to this
action are undisputed. Plaintiff Irene
Rousseau is a 60 year old resident of
Rhode Island. In January 1984, Plaintiff

---

1. Since the resolution of Plaintiffs' claim is
based on statutory grounds, it is inappropriate
to resolve any constitutional claim. A district
court should decline to resolve constitutional
issues if the controversy can be resolved on
statutory grounds which are dispositive. *Ha-
gans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372,
1382, 39 L.Ed.2d 577 (1973).

Rousseau filed a disability claim for SSI benefits with the United States Social Security Administration. SSI is a federal program that provides cash benefits to low income individuals who are aged, blind or disabled. On January 24, 1984, Plaintiff also filed a disability claim with the State of Rhode Island for Medical Assistance. DHS is the state agency which administers the Medical Assistance Program. The Medical Assistance or Medicaid Program pays the medical bills of needy people. Congress established the Medicaid program in 1965 as Title XIX of the Social Security Act to provide federal financial assistance to States choosing to reimburse needy persons for certain medical treatment costs. 42 U.S.C. § 1396 et seq. *See Schweiker v. Hogan,* 457 U.S. 569, 572, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982).

On May 25, 1984, the Social Security Administration denied Plaintiff's application for SSI benefits because she was not disabled as defined in the SSI statute. *See* 42 U.S.C. § 1382c. Plaintiff has pursued administrative review of the denial of SSI benefits through a hearing before an administrative law judge. She was denied benefits by the administrative law judge. Presently her appeal is pending before the Appeals Council of the Social Security Administration.

On June 1, 1984, Rhode Island Department of Human Services (DHS) notified Plaintiff that her claim for Medical Assistance was denied. This denial of state benefits resulted from the initial denial of federal benefits. DHS did not independently review Plaintiff's disability claim but based its decision entirely on the denial of SSI benefits. This action was a change from earlier policy. Until January 1984, DHS had independently reviewed disability based applications for Medical Assistance whether or not SSI benefits had been denied. In January 1984, pursuant to federal directives from the Department of Health and Human Services, the State began denying disability claims of persons who had been denied SSI benefits. The Rhode Island Department of Human Services (DHS) · no longer independently reviewed applica-

tions but adopted determinations made by the United States Social Security Administration that an applicant was not totally disabled.

Plaintiff Rousseau claims that she is entitled to Medical Assistance benefits as one who is optional categorically needy. Under the Medical Assistance statute, the State must provide benefits to certain categories of individuals and then it has the option of providing benefits to other categories of individuals. 42 U.S.C. § 1396 et seq. A State participating in the Medical Assistance Program such as Rhode Island must provide assistance to the categorically needy. The categorically needy are those persons receiving federal aid through cash assistance programs such as Aid to Families with Dependent Children (AFDC) and SSI. 42 U.S.C. § 1396a(a)(10)(A). Rhode Island has opted to expand benefits to the optional categorically needy and the medically needy. The optional categorically needy are persons who meet the eligibility requirements of the AFDC or SSI programs (both financial and non-financial) but who are not recipients of AFDC or SSI benefits. 42 U.S.C. § 1396a(a)(10)(A). Plaintiff Rousseau claims that she meets the requirements of the optional categorically needy because she meets the disability requirements of the SSI Program although she does not receive SSI benefits. Plaintiff Rousseau asserts that the State Medical Assistance Program should make an independent review of her claim of disability and should not automatically deny her benefits solely because the Social Security Administration has determined that she is not disabled.

Plaintiff Louise McKenna is a 62 year old resident of Rhode Island. From 1975 to March 1984, Plaintiff McKenna was a recipient of SSI benefits because of a disability. During this time period, Plaintiff McKenna was eligible for Medical Assistance benefits as one who was categorically needy. 42 U.S.C. § 1396a(a)(10)(A). On February 26, 1984, just as she was about to lose her SSI benefits and concomitant Medical Assistance, Plaintiff was notified

that her application for Widow's Benefits (under Title II of the Social Security Act) was approved and she began receiving a regular Social Security check of $386 per month. This $386 monthly benefit from Social Security rendered Plaintiff financially ineligible for SSI irrespective of disability. Since Plaintiff's income exceeded the limits for SSI, she did not appeal the determination by the Social Security Administration that she was no longer totally disabled. The State refuses Medical Assistance benefits to her.

On or about June 6, 1984, Plaintiff McKenna filed a claim for Medical Assistance with DHS which was based on total disability. Although her income exceeded the income guidelines for SSI, it was less than the maximum limits for Medical Assistance. Plaintiff McKenna asserts that she was eligible for Medical Assistance under the category of medically needy. The medically needy are persons who are unable to pay medical expenses whose incomes are too high for other federal financial assistance programs but whose incomes are within Rhode Island's financial guidelines for Medical Assistance; medically needy have the same characteristics as the categorically needy. *Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983). DHS did not independently review Plaintiff's disability claim but automatically found her ineligible for benefits solely because of the earlier finding by the Social Security Administration that she was not disabled. Plaintiff McKenna asserts that the policy of automatically denying her disability claim for Medical Assistance because of a Social Security Administration finding that she was not disabled as defined in the Social Security Statute 42 U.S.C. § 1382c violates 42 U.S.C. § 1396 et seq. of the Social Security Statute. Plaintiff contends that DHS is required to make an independent and impartial evaluation of her disability claim irrespective of a Social Security Administration determination regarding disability.

The parties to this action agree that before January 1984, DHS made its own determination regarding disability claims for Medical Assistance. Further, the parties agree that both the Medical Assistance Program and the SSI Program use the same definition of disability when evaluating a disability claim. The parties also agree that despite the use of the same standards, due to the complexity of the matters involved and the subjective element involved in resolving close questions, two different agencies applying the same standards may reach different results. It is possible that under the same circumstances the Social Security Administration could find that Plaintiffs Rousseau or McKenna did not meet the disability requirements of 42 U.S.C. § 1382c, and that DHS could find that they did. meet the disability requirements defined in 42 U.S.C. § 1382c and would therefore be eligible for Medical Assistance.

The United States Department of Health and Human Services has not adopted a regulation which requires denial of benefits by a State solely because an applicant has been denied SSI benefits. It is the present policy of DHS imposed upon it by the United States Department of Health and Human Services that it must adopt a federal finding of no disability.

Plaintiffs correctly contend that although the Medical Assistance Program was created by the Social Security Act and is governed by that Act and the regulations promulgated by the Secretary of Health and Human Services, it is a program administered entirely by the States. States administer their programs according to their "state plans." 42 U.S.C. § 1396a(a).

Defendant/Third Party Plaintiff Bordeleau, Director of the Rhode Island Department of Human Services asserts that the State's conduct in the administration of the Medical Assistance Program is in accord with the statute and regulations. She attributes changes in DHS's policy regarding disability determinations to policy directives from the Defendant Secretary of Health and Human Services.

The Secretary of Health and Human Services relies on the legislative history of 42

358

U.S.C. § 1396a(a)(10) and regulations. Defendant asserts that her interpretation of the Medical Assistance statute and regulations supports a finding that her policy regarding disability determinations must be considered to be correct. She relies on the Supreme Court statement:

We have often noted that the interpretation of an agency charged with the administration of the statute is entitled to substantial deference. *Blum v. Bacon,* 457 U.S. 132, 141 [102 S.Ct. 2355, 2361, 72 L.Ed.2d 728] (1982). Moreover the agency's construction need not be the only reasonable one in order to gain judicial approval.

*Connecticut Dept. of Income Maintenance v. Heckler,* —— U.S. ——, 105 S.Ct. 2210 at 2215, 85 L.Ed.2d 577 (1985). Defendant cites various cases which support a finding in favor of the Secretary provided her interpretation is "not arbitrary or capricious" *Home Health Services of the U.S., Inc. v. Schweiker,* 683 F.2d 353, 357 (11th Cir.1982); and her interpretation of her regulations is reasonable even though it may not appear as reasonable as another interpretation. *Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201, 1208 (5th Cir.1980).

Third Party Defendant asserts that her policy holding that SSI disability determinations control is the only reasonable interpretation of 42 U.S.C. § 1396a(a)(10). She asserts that her interpretation of 42 C.F.R. § 435.541(d) and 435.210 support her position. However, Third Party Defendant concedes that the situation at issue in this action was not anticipated and is not addressed directly in the regulations.

■ Thus an interpretation of the statute and regulations is required. Generally when interpreting a statute, the Court need not go beyond its language, unless it is ambiguous or rendered so by other statutory language in conflict with it. *Green v. C.I.R.,* 707 F.2d 404 (9th Cir.1983). The Social Security Act and its implementing regulations are not easily read and interpreted. As the Supreme Court noted in *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460

(1981) "The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly noted, makes the act 'almost unintelligible to the uninitiated.' " In his dissent in *Herweg v. Ray,* 455 U.S. 265, 279, 102 S.Ct. 1059, 1068, 71 L.Ed.2d 137 (1982) Chief Justice Burger noted that "the Medicaid program is a morass of bureaucratic complexity." In *Friedman v. Berger,* 409 F.Supp. 1225–26 (D.S.N.Y.1976), Judge Wyatt noted that the "Medicaid statute ... is an aggravated assault on the English language, resistant to attempts to understand it. The statute is complicated and murky, not only difficult to administer and to interpret but a poor example to those who would like to use plain and simple expressions." This action involves an issue created by a "policy statement" of the federal agency charged with the duty of accomplishing the already expressed policy of the Congress. A policy statement appears to be an internal determination of the agency, not subject to public comment as are regulations. Thus, an action twice removed from the statement of Congressional policy is at issue. As a policy statement, there is no basis to afford particular weight to the agency's statement. With the above words of caution, the Court will attempt to interpret the statute and implementing regulations in a coherent framework with a purpose to construct the structure envisaged by Congress and without considering statutory phrases and regulations in isolation. *U.S. v. Morton,* 467 U.S. 822, 104 S.Ct. 2769, 81 L.Ed.2d 680 (1984).

■ The Medical Assistance program is almost entirely administered by the States. A substantial part of the cost is paid by the federal government to those States whose programs meet federal requirements. Under the statutory framework, the participating States must submit to the Secretary of Health and Human Services a "state plan" which delineates the manner in which the State intends to administer its Medical Assistance Program. 42 U.S.C. § 1396a(a). The state plan is required to have a single state agency administer or supervise the

administration of the program. The state plan must:

(5) either provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan; or provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan, *except that the determination of eligibility for medical assistance under the plan shall be made by the State or local agency administering the State plan approved under subchapter I or XVI of this chapter (insofar as it relates to the aged)* if the State is eligible to participate in the State plan program established under subchapter XVI of this chapter, or by the agency or agencies administering the supplemental security income program established under subchapter XVI or the State Plan approved under part A of subchapter IV of this chapter if the State is not eligible to participate in the State plan program established under subchapter XVI of this chapter; (underscoring added)

42 U.S.C. § 1396a(a)(5).

Although this portion of the statute is not easily deciphered, it does specifically and literally direct that a participating State such as Rhode Island determine eligibility for Medical Assistance. This provision makes sense, in view of the fact that there is also a cost to the State to support the optional program of assistance. The regulations implementing this portion of the statute support this interpretation that it is the State that determines eligibility. 42 C.F.R. § 431.10(c). This subsection relates to provisions in the State plan to determine eligibility and it sets forth the options available. 42 C.F.R. § 431.10(d) specifically requires that the plan provide for written agreements between Federal and State agencies "stating the relationships and respective responsibilities of the agencies" for determination of eligibility.

Additional statutory support for the view that the States determine Medical Assistance eligibility can be found at 42 U.S.C.

§ 1383c. This section of the statute allows the Secretary to agree with the State to determine eligibility for Medical Assistance for the aged, blind and disabled and provides that the State must pay one-half of the cost of carrying out the agreement. Since the statute allows a State to contract away the powers to make disability determinations to the federal government, obviously, it assumes that the State has that authority in the first place. Section 1383c provides:

ELIGIBILITY FOR MEDICAL ASSISTANCE OF AGED, BLIND, OR DISABLED INDIVIDUALS UNDER STATE'S MEDICAL ASSISTANCE PLAN; DETERMINATION BY SECRETARY PURSUANT TO AGREEMENT BETWEEN SECRETARY AND STATE; COSTS

The Secretary may enter into an agreement with any State which wishes to do so under which he will determine eligibility for medical assistance in the case of aged, blind, or disabled individuals under such State's plan approved under subchapter XIX of this chapter. Any such agreement shall provide for payments by the State, for use by the Secretary in carrying out the agreement, of an amount equal to one-half of the cost of carrying out the agreement, but in computing such cost with respect to individuals eligible for benefits under this subchapter, the Secretary shall include only those costs which are additional to the costs incurred in carrying out this subchapter.

42 U.S.C. § 1383c.

Further, in the regulations under this section, the Secretary has explicitly limited her role. By regulation, the Secretary has excluded determination of eligibility for those person otherwise eligible but whose income disqualifies them for SSI benefits. 20 C.F.R. § 416.2112 provides:

*Limitations as to individuals covered by agreement to determine eligibility for medical assistance.*

Determinations of Medicaid eligibility under an agreement are limited to indi-

viduals (a) who have been determined to be eligible individuals under title XVI of the Act; or (b) who are receiving a State supplementary payment which is federally administered or both.

The Secretary's position is further clarified by 20 C.F.R. § 416.2107 which states:

*Effect of agreement on existing Federal-State responsibilities.*

The terms and conditions for approval of a State's medical assistance plan under title XIX of the Act and the State's responsibility under such plan remain unchanged except to the extent otherwise specifically provided for in the agreement. Thus, a State will continue to be responsible for any aspects of medical assistance eligibility determinations and other functions not specifically undertaken to be performed by the Secretary pursuant to the agreement....

Rhode Island's contract with the Secretary is consistent with the foregoing regulations. According to Rhode Island's agreement (euphemistically referred to as a Section 1634 Agreement), the Federal Department of Health and Human Services determines eligibility for SSI or other basic federal payments and notifies the State of those eligible for Medical Assistance benefits. Article II of the Agreement specifically lists the functions to be performed by the Secretary and limits her role to determinations concerning the categorically needy.

Although a person is not categorically needy, he or she may be optional categorically needy or medically needy The Secretary has excluded considering the eligibility of those who may be optional categorically needy or medically needy. Neither the statute nor the regulations provide that the State may not independently review applications of people who may fall into the category of medically needy or optional categorically needy. The Sixth Circuit in *Crippen v. Kheder*, 741 F.2d 102, 106 (1984) stated that although Plaintiff Crippen was no longer eligible for SSI and therefore not automatically eligible for Medical Assistance, "it does not follow,

however that she [Plaintiff] is automatically ineligible for such benefits." The *Crippen* Court interpreted 42 C.F.R. § 435.930b to require a State to continue to furnish Medical Assistance until the state agency determined a person ineligible. *Id.*

The regulation regarding "Determination of Disability" 42 C.F.R. § 435.541 supports the view that it is the State that determines eligibility for Medical Assistance. This regulation provides very specific procedures which a state must follow when making a determination on a disability claim and the documentation which must be filed. 42 C.F.R. § 435.541(d) specifically excludes from a further determination of disability individuals receiving SSI because of disability.

... If any agency provides Medicaid to individuals receiving SSI on the basis of disability, this section does not apply for those individuals

42 C.F.R. § 435.541(d).

The Secretary of Health and Human Services contends that subsection (d) means that 42 C.F.R. 435.541(a) through (c) of the requirements for disability determination do not apply when the SSI Program has determined the disability question. The Secretary attributes too much to the impact of § 435.541(d). It applies only to those determined to be disabled and qualified to receive SSI benefits. It has no meaning for those who are not receiving SSI benefits.

In other circumstances, there is support for the view that the State is to make an independent determination of eligibility for Medical Assistance before terminating Medical Assistant benefits. In *Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir.1983), the First Circuit found that the agency responsible for administering the Medicaid Program could not automatically terminate benefits to recipients who were no longer eligible for AFDC (i.e. a categorically needy group). The Court found that the state agency must promptly redetermine eligibility when it receives information about changes in a recipient's circumstanc-

es that may affect his or her eligibility under the categorically needy program pursuant to 42 C.F.R. § 435.916. In *Gilman v. Helms,* 606 F.Supp. 644 (1985), the New Hampshire District Court followed the reasoning of *Sharp* and found that 42 U.S.C. § 1396a required New Hampshire to redetermine the Medicaid eligibility of a recipient under the medically needy category before termination under the AFDC categorical assistance program for failure to comply with AFDC reporting requirements. Although both *Sharp* and *Gilman* involved AFDC recipients, AFDC recipients are categorically needy as are SSI recipients. Furthermore, in *Sharp,* the First Circuit relied on the SSI case of *Stenson v. Blum,* 476 F.Supp. 1331 (S.D.N.Y.1979), *aff'd, without opinion,* 628 F.2d 1345 (2d Cir), *cert. denied* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980) *Id.* at 753. In *Stenson,* plaintiffs were a class of recently terminated SSI recipients who sought to have their Medicaid eligibility determined and to have benefits continued until they were at least afforded notice and an opportunity for a hearing. In the *Stenson* case, the Court found that 42 C.F.R. § 435.916 regarding prompt redetermination of Medicaid eligibility and 42 C.F.R. § 435.930 regarding the furnishing of benefits until an individual is found ineligible, required the state to reconsider a recipient's eligibility for Medicaid. *Id.* at 1339–40. The Court held that the Section 1634 Agreement between the State of New York and the Secretary was consistent with the requirement that the state reevaluate terminated SSI recipients in order to determine continued entitlement to Medicaid. *Id.* at 1340–41.

The Medical Assistance statute and regulations provide the framework for appealing denials of claims. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. 431.200. The regulations provide for an evidentiary hearing, 42 C.F.R. 431.205(b) as well as the requirement that the "hearing system meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970)".... 42 C.F.R. 431.205(d). A meaningful hearing would not be afforded an applicant for Medicaid if the only issue is whether or not the applicant's SSI application had been denied. The statute and regulations require that applications for Medical Assistance be reviewed independently of any denial action made by the Social Security Administration. A fair hearing process requires not only an independent review of an applicant's claim of disability but also the possibility of a result different from the federal determination.

Congress has spoken through the statute that a State participating in the Medical Assistance Program is to determine eligibility. If a change is to be made, it is Congress's right and responsibility to change the statute. Although the present procedure with both state and federal determinations involves two separate determinations which may result in inconsistent outcomes, this Court does not have the authority to legislate and to change the statute.

*Conclusion*

In conclusion, the Court holds that the policy applied by the Rhode Island Department of Human Services of automatically denying Medical Assistance benefits to individuals who have been found ineligible for SSI benefits due to disability violates the Social Security Act and the regulations promulgated thereunder.

For the foregoing reasons, the Rhode Island Department of Human Services is enjoined from automatically denying an application for Medical Assistance based on disability when the applicant has been denied SSI benefits based on the same disability; the State is to make an independent review of the applicant's claim and is to rule on disability independently of any action taken by the Social Security Administration.

Plaintiffs have moved that their action receive class action status so that all similarly situated individuals would receive relief from this judgment. Since the relief granted by this Court can be expected to extend to all individuals similarly situated, no useful present purpose is served by granting the motion for class certification.