_____

No. 95-3034
_____

Daniel Von Eye,                         *
                                        *
          Appellant,                    *
                                        *   Appeal from the United States
     v.                                 *   District Court for the
                                        *   District of South Dakota.
United States of America;               *
United States Department of             *
Agriculture, Daniel R.                  *
Glickman,* Secretary,                   *
                                        *
          Appellees.                    *

_____

          Submitted:  May 15, 1996

            Filed:  August 9, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and VAN
     SICKLE,** District Judge.

_____

MAGILL, Circuit Judge.


     Daniel Von Eye wishes to continue his efforts to drain wetlands on
his farm, but does not want to lose eligibility for United States
Department of Agriculture (USDA) benefits under the Swampbuster Act, 16
U.S.C. §§ 3821-3824, which conditions receipt

_____

     *This action was originally brought against then
     Secretary Michael Espy in his official capacity.  During
     the pendency of the proceedings in the district court,
     Daniel R. Glickman was appointed Secretary of
     Agriculture.

     *THE HONORABLE BRUCE M. VAN SICKLE, United States
     District Judge for the District of North Dakota, sitting
     by designation.

of USDA benefits on wetlands preservation.  The USDA's Agricultural Stabilization and Conservation Service's (ASCS) National Appeals Division (NDS) determined that, while Von Eye's previous drainage of wetlands fell within an exception to the Swampbuster Act, any additional excavations to drain the wetlands would render him ineligible for benefits.  Von Eye brought suit in the district court,[1] challenging this administrative decision.  The district court dismissed Von Eye's complaint, upholding the NDS decision.  Von Eye now appeals, arguing that the NDS's decision was arbitrary and capricious.  We affirm.

## I.

Von Eye farms land in Clare Township in Moody County, South Dakota. He works fields containing three wetland areas.  In 1984, Von Eye began constructing a series of four ditches to drain approximately twenty acres of these wetlands.  The ditches fed water through two township-owned culverts set underneath a public road, and eventually drained into a state-owned slough.

In 1988, Von Eye received notice that he may have violated the Swampbuster Act, and Von Eye sought a commenced conversion exemption to the Act.[2]  Von Eye described a plan in his application for the exemption that, using a backhoe and a dirt scraper, four "channels were to be cut so all the farm ground would be drained."  Von Eye v. United States, 887 F. Supp. 1287, 1289 (D.S.D. 1995).  Von Eye submitted documents which indicated that the project was initiated in 1984 and completed in 1986, see J.A. at 137, and in 1987, see id. at 138.  In June 1989, after several administrative

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

[2]16 U.S.C. § 3822(b)(1)(a) provides an exemption from the Swampbuster Act for wetland conversion projects commenced prior to December 23, 1985.

-2-

proceedings, an ASCS committee determined that Von Eye was eligible for a commenced conversion exemption, and no explicit limits were set on the scope of conversion activities.

In 1990, Von Eye reported problems with one of the township-owned culverts to the local township board. In November 1990, Von Eye had the culvert replaced with a larger culvert, which was set six inches lower in the ground. Although the township board had not given prior approval to the replacement of the culvert, it agreed to cover the cost of replacement. Von Eye also had the second culvert lowered two feet, which the township board did not pay for. Lowering the culverts improved drainage of Von Eye's fields, converting more wetland.

On November 14, 1991, Von Eye received notice from the Soil Conservation Service that any further wetland manipulation activities were not authorized by the commenced conversion exemption, and that additional manipulations would disqualify him for USDA benefits. After a series of administrative hearings, the NDS determined, on December 6, 1993, that conversion actions completed by Von Eye prior to November 14, 1991, including the lowering of the culverts, would be exempted from the Swampbuster Act, because Von Eye had not been "notified of the scope and effect of the activities authorized by the county committee's original approval of the commenced conversion exemption." NDS Decision, J.A. at 12. In addition, Von Eye was allowed to maintain any conversion manipulations completed before November 14, 1991. However, the NDS concluded that manipulation activities commenced by Von Eye after November 14, 1991, were not included in Von Eye's commenced conversion exemption, and warned Von Eye that "[f]urther manipulation of the areas in question or other areas subject to the [Swampbuster Act] provisions may cause [Von Eye] to lose eligibility for USDA program benefits." Id.

Von Eye brought suit in the district court challenging this

-3-

administrative decision, seeking an affirmative order allowing him to complete his conversion project while remaining eligible for USDA benefits. The district court dismissed Von Eye's suit, concluding that "there is a rational relationship between the evidence considered and the agency's denial of a continuing commenced determination." Von Eye, 887 F. Supp. at 1293. Von Eye appeals the district court's ruling.

## II.

As an initial matter, the government challenges this Court's jurisdiction in this matter, arguing that the case is not ripe for adjudication, and that it is moot. We disagree.

The government argues that this case is not ripe because Von Eye's only proposed manipulation activities involve further lowering a culvert owned by the township. Because Von Eye does not have the township's permission to lower the culvert, and because this Court has no authority under the facts of this case to require the township to grant Von Eye such permission, the government asserts that we should not reach the merits of this case.

The government is correct that we do not have jurisdiction to consider a case which is not ripe. Ripeness exists if two requirements are met:

> First, [a plaintiff] must demonstrate a sufficiently concrete case or controversy within the meaning of Article III of the Constitution. Second, prudential considerations must justify the present exercise of judicial power. The concept of ripeness is particularly important in cases challenging land use regulations and results in a fact-sensitive inquiry.

Christopher Lake Dev. Co. v. St. Louis County, 35 F.3d 1269, 1272-73 (8th Cir. 1994) (citations omitted; note omitted). These requirements have been met in this case. The controversy at hand

is clear: Von Eye wishes to pursue a drainage project and still be eligible for USDA benefits, which is not possible under the district court ruling. Prudential considerations, including the length of time in which Von Eye's complaint has been in administrative and judicial proceedings, support our exercise of jurisdiction. While it is true that we have no authority, nor inclination, to require the township to allow Von Eye to lower its culverts, whether the township were to give or withhold its approval for the project would be irrelevant to Von Eye's continued eligibility for USDA benefits. Indeed, Von Eye has replaced and lowered township culverts in the past without its approval, and we see no reason to suppose that he would not do so again.

The government's mootness argument has more strength. Because "[t]he existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts," In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996) (quotations and citations omitted), "federal courts have no authority to render decisions upon moot questions." Id. Where

> a party has a sufficient stake in the outcome so that the court's rendering of relief alleviates the harm complained of, the question presented is not moot. However, if during the pendency of an appeal, an event occurs which destroys the court's ability to render the prevailing party any effectual relief whatever, the appeal must be dismissed as moot.

Id. (quotations and citations omitted). Under 7 C.F.R. § 12.5(b)(5)(iii), conversion activities allowed under the commenced conversion exemption must be completed on or before January 1, 1995. As that date is well past, the government argues that our decision could not affect Von Eye's rights in this matter.

The government accepts, however, that under certain circumstances the time limitation in § 12.5(b)(5)(iii) could be equitably tolled. See Appellee's Br. at 23. Although equitable

-5-

tolling is appropriate only in rare cases, see <u>Disabled Rights Union v. Shalala</u>, 40 F.3d 1018, 1021 (9th Cir. 1994), <u>cert. denied</u>, 116 S. Ct. 105 (1995), we agree that it could be available under the facts of this case. <u>See, e.g.</u>, <u>Bowen v. City of New York</u>, 476 U.S. 467, 480 (1986) ("traditional equitable tolling principle" applicable to period for appealing administrative decision (quotations omitted)); <u>see also</u> <u>Lyng v. Payne</u>, 476 U.S. 926, 936 (1986) ("If, for example, a farmer had filed a loan application prior to the expiration of the loan deadline and a court determined that the denial of the application after the deadline's expiration was arbitrary, capricious and not in accordance with law, the appropriate remedy under the APA would be to direct that the application be granted or reconsidered." (quotations and citations omitted)). Since 1991, long before the 1995 deadline, Von Eye attempted to convince the government to allow him to complete his drainage project. Contrary to the government's assertion, therefore, Von Eye has not "slept on his rights," <u>see</u> Appellee's Br. at 23, but rather did all that he reasonably could to prosecute his case. We conclude that, if Von Eye succeeded in this appeal, he would not be without relief, but rather would have the opportunity to request that the district court, on remand, equitably toll the period in which he could complete his drainage project.

**III.**

We review the district court's review of an administrative decision de novo. <u>See</u> <u>Lockhart v. Kenops</u>, 927 F.2d 1028, 1032 (8th Cir.), <u>cert. denied</u>, 502 U.S. 863 (1991). We must uphold the NDS's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). An arbitrary and capricious decision exists where an

> agency has relied on factors which Congress has not intended it
> to consider, entirely failed to consider an important aspect of
> the problem, offered an explanation

for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983).

Under the Swampbuster Act, 16 U.S.C. §§ 3821-3824, anyone who produces an agricultural commodity on a converted wetland, or converts wetland by "draining, dredging, filling, leveling, or any other means," 16 U.S.C. § 3821(b), is ineligible for enumerated USDA benefits, including price supports, loans, disaster payments, and crop insurance. See 16 U.S.C. § 3821(a). The Act provides, however, that wetland conversion commenced prior to December 23, 1985, does not render a person ineligible for benefits. See 16 U.S.C. § 3822(b)(1)(A). Under 7 C.F.R. § 12.5(b)(3)(i)-(ii), conversion has commenced if either there have been physical efforts to convert the wetland, or if substantial funds have been committed to the conversion. "A person must show that the commenced activity has been actively pursued or the conversion will not be exempt under this section." 7 C.F.R. § 12.5(b)(5)(ii). In addition, "[o]nly those wetlands for which the construction has begun or to which the [committed funds] relate may qualify for a determination of commencement." 7 C.F.R. § 12.5(b)(5)(iv). A special determination of commencement of conversion is allowed, however, "upon a showing that undue economic hardship will result because of substantial financial obligations incurred prior to December 23, 1985, for the primary and direct purpose of converting the wetland." Id.

Von Eye asserts that he commenced draining the wetlands in his fields in 1984, and that all of the actions he has taken, including lowering the culverts, and all actions that he intends to take, including additional lowering of a culvert, should fall within the commenced conversion exemption. He argues, therefore, that the NDS acted arbitrarily and capriciously in exempting part of his

commenced conversion, but disallowing its ultimate completion.

We disagree.  In describing his conversion plan to the ASCS, Von Eye referred only to the construction of four channels dug with a backhoe and a dirt scraper, and did not mention the lowering of culverts.  Von Eye did not project a completion date some six years after initiating his conversion activities, but rather stated that he had completed the project in 1986 and 1987.  As noted by the NDS, there was no evidence that Von Eye had committed substantial funds to the conversion activities he planned to engage in, see NDS Decision, J.A. at 12, nor has Von Eye demonstrated undue hardship.  See Von Eye, 887 F. Supp. at 1292.

We conclude that the NDS considered relevant evidence and arrived at a rational result.  Rather than arbitrarily denying Von Eye the exemption provided by the Swampbuster Act, the NDS was extremely liberal in interpreting the Act and regulations in Von Eye's favor, and in allowing him the advantages of an exemption longer than strictly provided for by the statute and regulations.  That Von Eye is dissatisfied with the results of his conversion project does not entitle him, under the Swampbuster Act, to engage in a new conversion project.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-